This instrument prepared by:

20121022000144900    1 / 11
Bk: 3041 Pg: 1241
Hanover Co VA
10/22/2012 01:17:04 PM
TRUST

After Recording Return To:
PRIME MORTGAGE LENDING, INC
320 N. SALEM ST., STE. 300
APEX, NORTH CAROLINA 27502
Loan Number:
Case Number:

Tax Map Reference No.:

PIN:

Amount of Consideration: 346,965.00

———————————————— [Space Above This Line For Recording Data] ————————————————

# DEED OF TRUST

| FHA CASE NO. |
| --- |
|  |

MIN:                                                                    MERS Phone:

THIS DEED OF TRUST ("Security Instrument") is made on   OCTOBER 19, 2012
The grantor is   GRANVILLE L GREEN, A MARRIED MAN AS HIS SOLE AND
SEPARATE PROPERTY

("Borrower").

The trustee is  NEWMAN & WRIGHT

a resident of the Commonwealth of Virginia, whose full residence or business address is  1503 SANTA
ROSA RD, HENRICO, VIRGINIA 23229
and  N/A

a resident of the Commonwealth of Virginia, whose full residence or business address is
N/A
trustees (any one of whom may act and who are referred to as "Trustee"). The beneficiary is Mortgage Electronic
Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors
and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

PRIME MORTGAGE LENDING, INC, A NORTH CAROLINA CORPORATION   ("Lender")
is organized and existing under the laws of   NORTH CAROLINA
and has an address of  320 N. SALEM ST., STE. 300, APEX, NORTH CAROLINA
27502

Borrower owes Lender the principal sum of   THREE HUNDRED FORTY-SIX THOUSAND NINE
HUNDRED SIXTY-FIVE AND 00/100            Dollars (U.S. $ 346,965.00      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on   NOVEMBER 1, 2042   .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest,
and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,
advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower
irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in
HANOVER                          , Virginia:
HICKORY HILL 22

which has the address of            9123 COLONNADE CIRCLE ·
                                        [Street]
            ASHLAND              , Virginia  23005              ("Property Address"):
            [City]                          [Zip Code]

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose
and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling
this Security Instrument.
        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower
warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.
        THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

        **UNIFORM COVENANTS.**  Borrower and Lender covenant and agree as follows:
        **1. Payment of Principal, Interest and Late Charge.**  Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.
        **2. Monthly Payment of Taxes, Insurance, and Other Charges.**  Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and
special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the
Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a
mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in
which such premium would have been required if Lender still held the Security Instrument, each monthly payment

20121022000144900    2 7 11
Bk: 3041 Pg: 1242
Hanover Co VA
10/22/2012 01:17:04 PM
TRUST

shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property)

FHA VIRGINIA DEED OF TRUST - MERS
VADOTZ.FHA  08/03/12                                    Page 3 of 8                        DocMagic *eForms*
                                                                                         www.docmagic.com

2017102200014490    3 / 11
Bk: 3041 Pg: 1243
Hanover Co VA
10/22/2012 01:17:04 PM
TRUST

and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

201210220001449000   4 / 11
Bk: 3041 Pg: 1244
Hanover Co VA
10/22/2012 01:17:04 PM
TRUST

**(b)   Sale Without Credit Approval.**  Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c)   No Waiver.**  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d)   Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)   Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within    60 DAYS

from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS                          from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.  Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:  (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11.  Borrower Not Released; Forbearance by Lender Not a Waiver.**  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.  Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

20121022000144900   5 / 11
Bk: 3041 Pg: 1245
Hanover Co VA
10/22/2012 01:17:04 PM
TRUST

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

201210220000144900    6 / 11
Bk: 3041 Pg: 1246
Hanover Co VA
10/22/2012 01:17:04 PM
TRUST

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Identification of Note.** The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgement hereto.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider                    ☐ Graduated Payment Rider            ☐ Growing Equity Rider
☒ Planned Unit Development Rider       ☐ Adjustable Rate Rider              ☐ Rehabilitation Loan Rider
☐ Non-Owner Occupancy Rider           ☐ Other [Specify]

2012102200014490 7 7 11
Bk: 3041 Pg: 1247
Hanover Co VA
10/22/2012 01:17:04 PM
TRUST

## NOTICE

**THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)                    _____ (Seal)
GRANVILLE L GREEN          -Borrower                                            -Borrower


_____ (Seal)                    _____ (Seal)
                          -Borrower                                            -Borrower


_____ (Seal)                    _____ (Seal)
                          -Borrower                                            -Borrower

Witness:                                            Witness:

———————————————— [Space Below This Line For Acknowledgment] ————————————————

State of VIRGINIA _____

County of ~~HANOVER~~ KSW Henrico _____

The foregoing instrument was acknowledged before me this October 19, 2017 _____

by GRANVILLE L GREEN _____

_____

_____


Commonwealth of Virginia
Kimberly Smithers Wright - Notary Public
Commission No: 143790
My Commission Expires 12-31-12

Kimberly Smithright
Signature of Person Taking Acknowledgment

Notary Public
Title or Rank

143790
Serial Number, if any

(Seal)                                              My commission expires: 12-31-12


FHA VIRGINIA DEED OF TRUST - MERS
VADOTZ.FHA 08/03/12                    Page 8 of 8                    *DocMagic eForms*
                                                                     www.docmagic.com

20121022000144900    8 / 11
Bk: 3041 Pg: 1248
Hanover Co VA
10/22/2012 01:17:04 PM
TRUST

FHA Case No.: ████████████
Loan Number: ████████████

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 19th day of OCTOBER, 2012 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to PRIME MORTGAGE LENDING, INC, A NORTH CAROLINA CORPORATION
("Lender") of the same date and covering the Property described in the Security Instrument and located at:

9123 COLONNADE CIRCLE, ASHLAND, VIRGINIA 23005

[Property Address]

The Property is part of a planned unit development ("PUD") known as:
HICKORY HILL

[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of the Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners' Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

20121022000144900    9 / 11
Bk: 3041 Pg: 1249
Hanover Co VA
10/22/2012 01:17:04 PM
TRUST

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)     _____ (Seal)
GRANVILLE  L  GREEN          -Borrower                                        -Borrower


_____ (Seal)     _____ (Seal)
                            -Borrower                                        -Borrower


_____ (Seal)     _____ (Seal)
                            -Borrower                                        -Borrower

FHA - MULTISTATE PUD RIDER
USFHAP.RDR  10/29/08                        Page 2 of 2                    DocMagic *eForms*
                                                                          www.docmagic.com

*10*

20121022000144900   10 / 11
Bk: 3041 Pg: 1250
Hanover Co VA
10/22/2012 01:17:04 PM
TRUST

# SCHEDULE A

ALL that certain lot, piece, or parcel of land, lying and being in Hanover County, Virginia, containing 1.000 acres, more or less, and designated as Lot 2, Section 2, Hickory Hill, on subdivision plat made by Balzer & Associates, Inc., dated November 8, 2010, recorded November 24, 2010, in the Clerk's Office, Circuit Court, Hanover County, Virginia, in Subdivision Plat Book 40, pages 160-175, to which plat reference is hereby made for a more particular description.

STREET ADDRESS: 9123 Colonnade Circle, Ashland, Virginia 23005

BEING the same real estate conveyed to Granville L. Green by deed from Royal Dominion Homes, Inc., a Virginia corporation, dated October 16, 2012 and recorded simultaneously herewith.

20121022000144900
HANOVER CO CLERK'S OFFICE
10/22/2012 01:17:04 PM
SEC 58.1-802 GRANTOR'S
TAX PD. $.00
FRANK D. HARGROVE, JR, CLERK
BY:   DBRUCE

Assessor's/Tax ID No. █████████
Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: █████████
PO BOX 1629
MINNEAPOLIS, MN  55440-9790



Bk: 3064 Pg: 637
Hanover Co VA
06/07/2013 11:41:05 AM
ASGMT

---

### CORPORATE ASSIGNMENT OF DEED OF TRUST

Hanover, Virginia
"GREEN"

MERS #: █████████    SIS #: █████████

Date of Assignment: June 3rd, 2013
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PRIME MORTGAGE LENDING, INCORPORATED, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST STE C., DANVILLE, IL 61834
Assignee: WELLS FARGO BANK, NA at 1 HOME CAMPUS, DES MOINES, IA 50328

Executed By: GRANVILLE L GREEN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PRIME MORTGAGE LENDING, INC., ITS SUCCESSORS AND ASSIGNS
 Trustee: NEWMAN & WRIGHT Date of Deed of Trust:  10/19/2012 Recorded:  10/22/2012  in Book/Reel/Liber: 3041 Page/Folio: 1241 as Instrument No.: 20121022000144900  In Hanover County, State of Virginia.

Property Address: 9123 COLONNADE CIRCLE, ASHLAND, VA 23005

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $346,965.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Deed of Trust.

    TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:
 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PRIME MORTGAGE LENDING, INCORPORATED, ITS SUCCESSORS AND ASSIGNS
On 6·5·13

By: _Jennifer Warren_
      Jennifer Warren
      , Assistant  Secretary

STATE OF Iowa
COUNTY OF Polk

On 6-5-13 , before me, _____Diana Nizzi_____ , a Notary Public in and for Polk in the State of Iowa, personally appeared _____Jennifer Warren_____ , Assistant  Secretary being duly sworn of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

      _Diana Nizzi_
Notary Expires: 10·24·15

DIANA NIZZI
Commission Number 743624
My Commission Expires
October 24, 2015

(This area for notarial seal)

PREPARED BY: WELLS FARGO BANK, N.A.

20130607000090970
HANOVER CO CLERK`S OFFICE
06/07/2013 11:41:05 AM
SEC 58.1-802 GRANTOR`S
TAX PD. $.00
FRANK D. HARGROVE, JR, CLERK
BY:  RJACOBUS

MIN: ▮▮▮▮▮▮▮              Loan Number: ▮▮▮▮▮▮

# NOTE

| FHA Case No. ▮▮▮▮▮▮▮ |

OCTOBER 19, 2012            APEX                    NORTH CAROLINA
[Date]                      [City]                  [State]

9123 COLONNADE CIRCLE, ASHLAND, VIRGINIA 23005
[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means PRIME MORTGAGE LENDING, INC, A NORTH CAROLINA
CORPORATION                                          and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of
THREE HUNDRED FORTY-SIX THOUSAND NINE HUNDRED SIXTY-FIVE AND
00/100                    **Dollars (U.S. $ 346,965.00        )**,
plus interest, to the order of the Lender. Interest will be charged on unpaid principal, from the date of disbursement
of the loan proceeds by Lender, at the rate of THREE AND 750/1000                    percent
(    3.750  %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated
the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from
losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning
on DECEMBER 1, 2012                    . Any principal and interest remaining on the 1st    day of
NOVEMBER, 2042              , will be due on that date, which is called the "Maturity Date."
**(B) Place**
Payment shall be made at 320 N. SALEM ST., STE. 300, APEX, NORTH
CAROLINA 27502
, or at such other place
as Lender may designate in writing by notice to Borrower.
**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S. $1,606.85          .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to
principal, interest and other items in the order described in the Security Instrument.
**(D) Allonge to this Note for Payment Adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants
of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge
were a part of this Note.

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty,
on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest
on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations
of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount
of the monthly payment unless Lender agrees in writing to those changes.

VIRGINIA - FHA FIXED RATE NOTE
VAFHA.NTE  11/23/10              Page 1 of 3              DocMagic eForms
www.docmagic.com

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000 percent ( 4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_____ (Seal)
GRANVILLE L GREEN                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

*[Sign Original Only]*

This is to certify that this is the Note described in and secured by a Deed of Trust dated OCTOBER 19, 2012 on the property located in        ASHLAND/HANOVER        , Virginia.

Commonwealth of Virginia
Kimberly Smithers Wright - Notary Public
Commission No: 143790 3-12
My Commission Expires 12-36

Kimberly Swinger
                                    Notary Public

My Commission expires: 12-31-12

PAY TO THE ORDER OF:  Wells Fargo  BANK NA  yes
  WITHOUT RECOURSE

PRIME MORTGAGE LENDING, INC, A NORTH CAROLINA CORPORATION

BY: _____
       RALPH CUMMINNGS

ITS: MANAGER

Pay to the Order of
_____
Without Recourse
Wells Fargo Bank, NA
By _____
      Scott M. Swanson
      Assistant Vice President

011

VIRGINIA - FHA FIXED RATE NOTE
VAFHA.NTE  11/23/10                    Page 3 of 3                    DocMagic eForms
                                                                     www.docmagic.com

20141007000107530  1 / 7
Bk: 3098 Pg: 1694
Hanover Co VA
10/07/2014 12:18:57 PM
AGMT

When recorded mail to: #:9052010
First American Title
Loss Mitigation Title Services 1079.12
P.O. Box 27670
Santa Ana, CA 92799
RE: GREEN - PR DOCS

This Document Prepared By:
**MARK STEVE GEORGE**
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SC 29715**
**(800) 416-1472**

When Recorded Mail To:
**FIRST AMERICAN TITLE**
**ATTN: LMTS**
**P.O. BOX 27670**
**SANTA ANA, CA 92799-7670**

Tax/Parcel No. ▮

_____ [Space Above This Line for Recording Data] _____
**Original Principal Amount: $346,965.00**          **FHA/VA Loan No.:**
**Unpaid Principal Amount: $338,404.79**          **FHA Case No.**
**New Principal Amount $250,914.80**          **Loan No: (scan barcode)**
**New Money (Cap): $0.00**

## LOAN MODIFICATION AGREEMENT (DEED OF TRUST)
### (Providing for Fixed Rate)

### Tax Exempt per Virginia State Code 58.1-803C

This Loan Modification Agreement ("Agreement"), made this **14TH** day of **AUGUST, 2014**, between **GRANVILLE L. GREEN, A MARRIED MAN** ("Borrower"), whose address is **9123 COLONNADE CIRCLE, ASHLAND, VIRGINIA 23005** and **WELLS FARGO BANK, N.A.** ("Lender"), whose address is **3476 STATEVIEW BLVD, MAC# X7801-03K, FORT MILL, SC 29715** amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **OCTOBER 19, 2012** and recorded on **OCTOBER 22, 2012** in **BOOK 3041 PAGE 1241, HANOVER COUNTY, VIRGINIA**, and (2) the Note, in the original principal amount of U.S. **$346,965.00**, **bearing the same date as**, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at
**9123 COLONNADE CIRCLE, ASHLAND, VIRGINIA 23005**

the real property described is located in **HANOVER COUNTY, VIRGINIA** and being set forth as follows:

### SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

Wells Fargo Custom FHA HAMP Loan Modification Agreement

Initial ▮

First American Mortgage Services                                             Page 1

1. Borrower agrees that certain amounts owed will not be capitalized, waived, or addressed as part of this Agreement, and will remain owed until paid. These amounts owed are referenced in the Cover Letter to this Agreement, which is incorporated herein, and are to be paid with the return of this executed Agreement. If these amounts owed are not paid with the return of this executed Agreement, then Lender may deem this Agreement void.

2. As of, **SEPTEMBER 1, 2014** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$250,914.80**, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. **$0.00** and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed. **This Unpaid Principal Balance has been reduced by the contemporaneous HUD Partial Claim amount of $87,489.99. This agreement is conditioned on the proper execution and recording of this HUD Partial Claim.**

3. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.2500%**, from **SEPTEMBER 1, 2014**. The Borrower promises to make monthly payments of principal and interest of U.S. **$1,234.35**, beginning on the **1ST** day of **OCTOBER, 2014**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **SEPTEMBER 1, 2044** (the "Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

4. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

5. The Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement.

6. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:
   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and
   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

Wells Fargo Custom FHA HAMP Loan Modification Agreement

First American Mortgage Services                                    Page 2





7. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

8. Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

9. If included, the undersigned Borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure

20141007000107530    3 / 7
Bk: 3098 Pg: 1696
Hanover Co VA
10/07/2014 12:18:57 PM
AGMT

In Witness Whereof, the Lender have executed this Agreement.

WELLS FARGO BANK, N.A.

**Elizabete Gizaw**
Vice President Loan Documentation

By _~~Eizahete~~_ _9-15-14_ _____
By                              (print name)                              Date
                                    (title)
_____ [Space Below This Line for Acknowledgments] _____

### LENDER ACKNOWLEDGMENT

STATE OF _____Minnesota_____          COUNTY OF _____Dakota_____

The instrument was acknowledged before me this _____9/15/14_____ by
_____Elizabete Gizaw_____ , the

**Vice President Loan Documentation** of **WELLS FARGO BANK, N.A.**,

a **Vice President Loan Documentation** , on behalf of said company.

_~~Bril~~_ _____
Notary Public

Printed Name: **Brian C. Wilson**

My commission expires: _1/31/2016_

**THIS DOCUMENT WAS PREPARED BY:**
**MARK STEVE GEORGE**
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC#** ▓▓▓▓▓
**FORT MILL, SC 29715**

[Notary stamp:]
**BRIAN C. WILSON**
**NOTARY PUBLIC - MINNESOTA**
**My Commission Expires**
**January 31, 2016**

Wells   Fargo   Custom   FHA   HAMP   Loan   Modification   Agreement

First American Mortgage Services                    Page 4



20141007000107550
Bk: 3098 Pg: 1697
Hanover Co VA
10/07/2014 12:18:57 PM
AGMT

In Witness Whereof, I have executed this Agreement.

_Granville L. Green_ (signature)

8-22-14

Borrower: **GRANVILLE L GREEN**                    **Date**

_____          _____
Borrower:                                          **Date**

_____          _____
Borrower:                                          **Date**

_____          _____
Borrower:                                          **Date**
_____[Space Below This Line for Acknowledgments]_____

## BORROWER ACKNOWLEDGMENT

State of ___VIRGINIA___

County of ___HANOVER___

The foregoing instrument was acknowledged before me this _August 22, 2014_ (date) by
**GRANVILLE L GREEN** (name of person acknowledged)

_Linwood H. Scott_ (signature)

Notary Public

Printed Name: _Linwood H. Scott_

My commission expires: ___10-31-14___



Wells  Fargo  Custom  FHA  HAMP  Loan  Modification  Agreement

First American Mortgage Services                    Page 5



20141007000107550   5/7
Bk: 3098 Pg: 1698
Hanover Co VA
10/07/2014 12:18:57 PM
AGMT

## EXHIBIT A

**BORROWER(S): GRANVILLE L. GREEN, A MARRIED MAN**

**LOAN NUMBER: (scan barcode)**

**LEGAL DESCRIPTION:**

CONTAINING 1.000 ACRES, MORE OR LESS, AND DESIGNATED AS LOT 2, SECTION 2, HICKORY HILL., ON SUBDIVISION PLAT MADE BY BALZER & ASSOCIATES, INC., DATED NOVEMBER 8, 2010, RECORDED NOVEMBER 24, 2010, IN THE CLERK'S OFFICE, CIRCUIT COURT, HANOVER COUNTY, VIRGINIA, IN SUBDIVISION PLAT BOOK 40, PAGES 160-175, TO WHICH PLAT REFERENCE IS HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION. SUBJECT TO SUCH COVENANTS, RESTRICTIONS, CONDITIONS AND EASEMENTS OF RECORD AS MAY LAWFULLY AFFECT SAID PROPERTY.

**ALSO KNOWN AS: 9123 COLONNADE CIRCLE, ASHLAND, VIRGINIA 23005**



2014100700010     8
Bk: 3098 Pg: 1699
Hanover Co VA
10/07/2014 12:18:57 PM
AGMT

Bk: 3098 Pg: 1700
Hanover Co VA
10/07/2014 12:18:57 PM
AGMT

Date: AUGUST 14, 2014
Loan Number: (scan barcode)
Lender: WELLS FARGO BANK, N.A.
Borrower: GRANVILLE L GREEN
Property Address: 9123 COLONNADE CIRCLE, ASHLAND, VIRGINIA 23005

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____    8-22-14
Borrower                                      Date
**GRANVILLE L GREEN**

_____    _____
Borrower                                      Date

_____    _____
Borrower                                      Date

_____    _____
Borrower                                      Date

_____    _____
Borrower                                      Date

_____    _____
Borrower                                      Date

Wells  Fargo  Custom  FHA  HAMP  Loan  Modification  Agreement

First American Mortgage Services                    Page 7



20141007000107530
HANOVER CO CLERK'S OFFICE
10/07/2014 12:18:57 PM
SEC 58.1-802 GRANTOR'S
TAX PD. $.00
FRANK D.HARGROVE,JR,CLERK
BY:    JEARLE

# Hanover County, Virginia

- [Home](#)
- [About Hanover County](#)
- [Contact](#)

## Selected Record

**Parcel ID** ▓▓▓▓▓▓▓▓

**Owner:** GREEN, GRANVILLE L

**Mailing Address:** 9123 COLONNADE CIRCLE

**Mailing City/State:** ASHLAND VA

**Mailing Zip:** 23005    **Property House #:** 9123

**Property Street Name:** COLONNADE CIRCLE

**Apt/Suite:**    **Acreage:** 1

**Zoning Class:** RC    **Deed Book:** 1041

**Sale Price/Date:**    **Deed Page:** 1238

**Old Parcel:**

**Subdivision:** HICKORY HILL    **Lot/Block/Section:** LOT 2 SEC 2

**Census Tract:**    **SSA:**

**Land value ($):** 120000    **Land Use Value ($):** 0

**Improvement value ($):** 265000    **Total Value ($):** 385000

**Election District:** Beaverdam    **Precinct:** Courthouse

**Polling Place:** County Administration Building    **Elementary School:** Kersey Creek

**Middle School:** Oak Knoll    **High School:** Hanover High

**Last Sale Price:** 353366    **Last Sale Date:** 1012

**Grantor First Name:**    **Grantor Last Name:** ROYAL DOMINION HOMES INC

**Year Built:** 2012    **Stories:** 2 Story

**Roof:** Composition Shingle    **Exterior Wall:** Vinyl Siding

**Assessment Area:** 080300    **Foundation Type:** Crawl

**Foundation Construction:** Brick    **Finished Basement %:** 0

**Basement Garage:** No Basement Garage    **Basement Garage Doors:** N

**Rooms:** 8    **Bedrooms:** 4

**Baths:** 2    **Half Baths:** 1

**Interior Finish:** Sheet Rock    **Heat Type:** Heat Pump

**Central Air:** Central A/C    **Fireplaces:** 0

**Fireplace Type:** None    **Misc. Improvements 1:**

**Finished Area:** 0    **Unfinished Area:** 0