**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

In re:  GRANVILLE LEROY GREEN,   Case No.  18-36375-KLP
                                 Chapter 7
                Debtor.

**TRUSTEE'S MOTION TO AUTHORIZE PRIVATE SALE
OF REAL PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 363**

**NOW COMES** the Chapter 7 Trustee, Roy M. Terry, Jr. (the "**Trustee**"), by counsel, and files this motion for entry of an order pursuant to 11 U.S.C. § 363(f), Federal Rules of Bankruptcy Procedure 6004, and Local Bankruptcy Rules 6004-2, and moves this Court for entry of an order authorizing the Trustee to sell by private sale the property commonly known as 9123 Colonnade Circle, Ashland, Virginia 23005-7463, with such sale to be free and clear of all liens, claims, encumbrances, and interests, and such liens, claims, encumbrances, and interest to attach, to the same extent and in the same priority, to the proceeds of such sale, and in support thereof respectfully represents as follows:

**Jurisdiction**

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 & 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(N).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 & 1409.

William A. Gray, VSB No. 46911
Klementina V. Pavlova, VSB No. 92942
SANDS ANDERSON PC
P.O. Box 1998
Richmond, Virginia 23218-1998
Telephone: 804.648.1636
  *Counsel for Roy M. Terry, Jr., Chapter 7 Trustee*

**Facts**

4. On December 20, 2018 (the "**Petition Date**"), Granville Leroy Green (the "**Debtor**") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division.

5. Roy M. Terry, Jr. was appointed interim Chapter 7 Trustee and continues to serve in that capacity.

6. As of the Petition Date, the Debtor owned a certain piece of real property in Hanover County commonly known as 9123 Colonnade Circle, Ashland, Virginia 23005-7463, and more particularly described as follows:

> ALL that certain lot, piece or parcel of land, lying and being in Hanover County, Virginia, containing 1.000 acres, more or less, and designated as Lot 2, Section 2, Hickory Hill, on subdivision plat made by Balzer & Associates, Inc., dated November 8, 2010, recorded November 24, 2010, in the Clerk's Office, Circuit Court, Hanover County, Virginia, in Subdivision Plat Book 40, pages 160-175, to which plat reference is hereby made for a more particular description.
>
> STREET ADDRESS: 9123 Colonnade Circle, Ashland, Virginia 23005.
>
> BEING the same real estate conveyed to Granville L. Green by deed from Royal Dominion Homes, Inc., a Virginia Corporation, dated October 16, 2012, and recorded in the Clerk's Office, Circuit Court, Hanover County, Virginia, in Deed Book 3041, page 1238.

(the "**Property**").

7. The Property is encumbered by a first priority Deed of Trust from Granville LeRoy Green (grantor/borrower) to Newman & Wright (grantees/trustees) with an approximate principal balance of $248,754.70 as of October 16, 2018, for the benefit of the Wells Fargo Bank, NA (lender), made October 19, 2012, recorded October 22, 2012 in the Clerk's Office of the

Circuit Court of Hanover County, Virginia, as Instrument # 20121022000144900 (the "**First Deed of Trust**").

8. The Trustee has been advised that the Property is also encumbered by a judgment lien to Brant Harper (plaintiff), in the amount of $8,000.00 including interest at six percent (6%) from February 3, 2014, recorded February 25, 2014, in the Clerk's Office of the Circuit Court of Hanover County, Virginia, as Instrument # 20140225100008020, Book 61, at page 1206 (the "**Judgment Lien**").  The Trustee will evaluate this Judgment Lien and determine its validity and status prior to closing.

9. On April 10, 2019, Hickory Hill Property Owners Association, Inc., by counsel, filed a proof of claim based on a judgment for unpaid association dues in the amount of $1,290.80.  The Trustee will evaluate this judgment and determine its validity and status prior to closing.

10. On April 3, 2019, the Trustee filed an Application to Employ Real Estate Agent (Re/Max Commonwealth) (doc. no. 23).  On April 25, 2019, the Court entered an Order granting the application to employ Re/Max Commonwealth (doc. no. 25).

11. The Trustee has entered into a Purchase Agreement, subject to Court approval, dated April 25, 2019, from Daniel Akono and Sorelle Kamdem (the "**Purchasers**") to purchase the Property for Three Hundred Thirty-Eight Thousand dollars ($338,000) (the "**Sale Contract**"). A copy of the Sale Contract is attached hereto as <u>Exhibit A</u>.

12. The sale of the Property would be free and clear of all liens, claims, encumbrances and interests, and such liens, claims, encumbrances and interests would attach to the proceeds of the sale to the same extent and in the same order of priority.

13. The Trustee believes the sale of the Property is in the best interest of the Debtor, the bankruptcy estate, the lienholders, and unsecured creditors.

14. The Trustee prays this Court enter an Order waiving the fourteen (14) day stay in Federal Rule of Bankruptcy Procedure 6004(h), to allow the parties to proceed immediately upon entry of an order.

**WHEREFORE**, the Trustee respectfully requests entry of an order substantially in the form attached hereto: (a) authorizing the Trustee to sell the property commonly known as 9123 Colonnade Circle, Ashland, Virginia 23005-7463, by private sale to Daniel Akono and Sorelle Kamdem (the "Purchasers") for the sum of Three Hundred Thirty-Eight Thousand Dollars ($338,000), with such sale to be free and clear of all liens, claims, encumbrances and interests, and such liens, claims, encumbrances and interests would attach to the proceeds of the sale to the same extent and in the same order of priority; (b) authorizing the Trustee to proceed to closing and execute all necessary documents and instruments to complete the sale of the Property; (c) ordering that the fourteen (14) day waiting period imposed by Federal Rule of Bankruptcy Procedure 6004(h) is waived, thereby allowing the Trustee to proceed with the sale of the Property immediately upon entry of this order; and (d) granting the Trustee such other and further relief as is deems just and proper.

Date: May 14, 2019  */s/ Klementina V. Pavlova*
William A. Gray, VSB No. 46911
Klementina V. Pavlova, VSB No. 92942
SANDS ANDERSON PC
P.O. Box 1998
Richmond, Virginia 23218-1998
Telephone: 804.648.1636
  *Counsel for Roy M. Terry, Jr., Chapter 7 Trustee*

ND4814-5868-4565

4

*Proposed Order*

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF VIRGINIA
# Richmond Division

In re:  **GRANVILLE LEROY GREEN,**             Case No.  18-36375-KLP
                                                     Chapter 7

                     **Debtor.**

## ORDER

This matter comes before the Court on the *Trustee's Motion to Authorize Private Sale of Real Property of the Estate Pursuant to 11 U.S.C. § 363* (the "**Motion**") seeking, among other things, to sell a certain piece of real property commonly known as 9123 Colonnade Circle, Ashland, Virginia 23005-7463, and more particularly described as follows:

> ALL that certain lot, piece or parcel of land, lying and being in Hanover County, Virginia, containing 1.000 acres, more or less, and designated as Lot 2, Section 2, Hickory Hill, on subdivision plat made by Balzer & Associates, Inc., dated November 8, 2010, recorded November 24, 2010, in the Clerk's Office, Circuit Court, Hanover County, Virginia, in Subdivision Plat Book 40, pages 160-175, to which plat reference is hereby made for a more particular description.
>
> STREET ADDRESS:  9123 Colonnade Circle, Ashland, Virginia 23005.
>
> BEING the same real estate conveyed to Granville L. Green by deed from Royal Dominion Homes, Inc., a Virginia Corporation, dated October 16, 2012, and recorded in the Clerk's Office, Circuit Court, Hanover County, Virginia, in Deed Book 3041, page 1238.

(the "**Property**").  Upon consideration of the Motion,

       **IT IS ORDERED** that the Motion is GRANTED;

       **IT IS ORDERED** that the Trustee is authorized to sell the property commonly known as 9123 Colonnade Circle, Ashland, Virginia 23005-7463, by private sale to Daniel Akono and

---

William A. Gray, VSB No. 46911
Klementina V. Pavlova, VSB No. 92942
SANDS ANDERSON PC
P.O. Box 1998
Richmond, Virginia 23218-1998
Telephone: 804.648.1636
 *Counsel for Roy M. Terry, Jr., Chapter 7 Trustee*

Sorelle Kamdem (the "Purchasers") for the sum of Three Hundred Thirty-Eight Thousand Dollars ($338,000);

**IT IS ORDERED** that the sale of the Property shall be free and clear of all liens, claims, encumbrances, and interests, with such liens, claims, encumbrances, and interests to attach, to the same extent and in the same priority, to the proceeds of such sale;

**IT IS ORDERED** that the Trustee is authorized to proceed to closing and execute all necessary documents and instruments to complete the sale of the Property; and

**IT IS ORDERED** that the fourteen (14) day waiting period imposed by Federal Rule of Bankruptcy Procedure 6004(h) is waived, thereby allowing the Chapter 7 Trustee to proceed with the sale of the Property immediately upon entry of this order.

Date:

KEITH L. PHILLIPS, JUDGE
United States Bankruptcy Court

Entered to the Docket:

I ask for this:

*/s/ Klementina V. Pavlova*
William A. Gray, VSB No. 46911
Klementina V. Pavlova, VSB No. 92942
SANDS ANDERSON PC
P.O. Box 1998
Richmond, Virginia 23218-1998
Telephone: 804.648.1636
  *Counsel for Roy M. Terry, Jr., Chapter 7 Trustee*

## LOCAL BANKRUPTCY RULE 9022-1(C)(2) CERTIFICATION

I hereby certify that on the 14th day of May, 2019, a true copy of the foregoing proposed Order was served (as an exhibit to the Motion) on all parties receiving service of the Motion.

*/s/ Klementina V. Pavlova*

2

**COPIES TO:**

Granville LeRoy Green
6289 Indian Trail Court
Mechanicsville, VA 23111
  *Debtor*

Genene E. Gardner, Esquire
The Merna Law Group
3419 Virginia Beach Blvd, #236
Virginia Beach, VA 23452
  *Counsel for Debtor*

Malcolm B. Savage, III, Esquire
Mary F. Balthasar Lake, Esquire
Shapiro & Brown, LLP
501 Independence Parkway, Suite 203
Chesapeake, VA 23320
  *Counsel for Wells Fargo Bank, NA*

William Brant Harper, Jr.
12329 Morning Creek Road
Glen Allen, VA 23059-7100
  *Creditor*

Edward S. Whitlock, III, Esquire
Lafayette, Ayers & Whitlock, PLC
10160 Staples Mill Road, Suite 105
Glen Allen, VA 23060
  *Counsel for Hickory Hill Property Owners Association, Inc.*

Roy M. Terry, Jr., Esquire
SANDS ANDERSON PC
P.O. Box 2188
Richmond, VA 23218-2188
  *Chapter 7 Trustee*

Robert B. Van Arsdale, Esquire
Office of the U.S. Trustee
701 East Broad Street, Room 4304
Richmond, VA 23219
*Assistant U.S. Trustee*

3

EXHIBIT A

Authentisign ID: 3A7F5F25-B91F-4F12-B4F7-BD9A4CDF6CE1

  

**Central Virginia Regional MLS**
**Purchase Agreement**

This is a legally binding document for the purchase of real property. If not understood, seek competent advice before signing.
(Paragraphs marked with an asterisk * require a blank to be filled in or checked.)

*This Purchase Agreement (the "Agreement") is dated __Apr    25th__, 20__19__, between __Daniel Akono__ __Sorelle Kamdem__ ("Purchaser") and __Roy M. Terry, Trustee__ ("Seller"). The parties acknowledge __RE/MAX Commonwealth__ ("Listing Broker") represents Seller, and __Keller Williams Realty__ ("Selling Broker") represents Purchaser.

* **1. REAL PROPERTY:** Purchaser agrees to buy and Seller agrees to sell the land, all improvements thereon, and appurtenances thereto belonging, located in the City/County of __Hanover__, Virginia. Lot __2__ Block ____ Section ____ of __Hickory Hill__ subdivision, Tax Parcel # __7890-81-7759__ and more commonly known as: __9123 Colonnade CIR__ __Ashland__ VA __23005-7463__ together with the items of personal property described in paragraph 2 (the "Property").

***2. PERSONAL PROPERTY INCLUDED:** Included with the sale of the above real estate (if located within said Property at the time of signing this Agreement, unless otherwise noted) are the shades, plantation shutters, blinds, curtain and drapery rods, screens and screen doors, storm windows and doors, light fixtures, wall to wall carpeting, garbage disposal, built-in range, built-in oven, built-in dishwasher, laundry tubs, attic fan, smoke and heat detectors, awnings, electrical wiring connections for appliances, ceiling fan(s), garage door opener(s) and remotes, mailbox and post, outbuildings and sheds, gas logs, fireplace inserts and all other items attached to the real estate and being a part thereof, including all shrubbery and plantings on the Property. Also included are the following items:

_____

***3. ADDENDA:** The following addenda are made a part of this Agreement:
☐ Lead-Based Paint Disclosure (required on all pre-1978 homes)   ☐ Right of First Refusal   ☐ Short Sale Addendum
☐ "AS IS" Addendum          ☐ Other _____

***4. PURCHASE PRICE:** The Purchase Price of the Property is __Three Hundred Thirty-Eight Thousand__ Dollars ($ __338,000.00__ ), which shall be paid to Seller at settlement, subject to the pro-rations described herein and/or from the following sources **[check all applicable box(es)]**:

☐ This sale is <u>not</u> subject to financing. Purchaser shall pay all cash at closing by bank certified funds or bank wire.

☒ This sale <u>is</u> subject to financing. This is subject to Purchaser being able to obtain or assume a **[select loan type]**:

☒ Conventional; ☐ FHA; ☐ VA; ☐ VHDA or ☐ other _____ loan in the principal amount of __90__ % of the Purchase Price OR $ _____ ("Loan Amount"), secured by a first deed of trust lien on the Property bearing interest at a **[select one box]**:

☐ fixed rate not exceeding ____% per year  OR
☐ at an adjustable rate with an initial rate not to exceed ____% per year and a maximum rate not to exceed ____% during the term of the loan  OR
☒ at the prevailing rate of interest at the time of settlement.

The loan shall be amortized for a term of __30__ years and shall require not more than a total of __1__ discount and origination points. (For loan assumption, the balance set forth above is approximate. The principal amount to be assumed will be the outstanding principal balance on the date of settlement. Purchaser shall assume all obligations of Seller under such loan with the exception of past due charges for which Seller shall be liable). Purchaser shall pay the balance of the Purchase Price at settlement, less any deposit, loan amount and/or other credits set forth in this Agreement. Nothing in this Agreement prohibits Purchaser from seeking financing other than as specified above so long as settlement is not delayed and there is no cost to Seller. Purchaser's failure to obtain such alternative financing does not relieve Purchaser from the obligations to obtain the financing specified above.

☐ Seller agrees to pay at settlement (to be reflected on the settlement statement) the sum of $ __0__ towards Purchaser's closing costs, prepaids, discount points and loan expenses.

This form was produced by Tara Kelley. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

Authentisign ID: 3A7F5F25-B91F-4F12-B4F7-BD9A4CDF6CE1

**\*5. APPRAISAL:** This sale [select one]: ☒ is  OR  ☐ is not further subject to the Property's appraised value equaling or exceeding the Purchase Price, which value shall be determined by an appraiser selected by Purchaser's lender (if a cash purchase, the appraiser shall be selected by Purchaser). **The appraisal shall be ordered within fifteen (15) days of the Date of Ratification. It shall be the responsibility of Purchaser to advise Purchaser's lender of this requirement.** If the appraisal is not ordered within 15 days of the Date of Ratification, then Seller may terminate this Agreement by written notice to Purchaser and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. If the appraisal is ordered after the 15 day period but Seller has not yet terminated this Agreement, then Seller's right to terminate this Agreement for said purpose is waived.

Regarding the appraisal, if the Purchase Price exceeds the appraised value, Purchaser shall either: (i) proceed with consummation of this Agreement without regard to the amount of the appraised value, or (ii) make a written request to Seller within five (5) days of receipt of the appraisal for a reduction in the Purchase Price so long as the reduced Purchase Price is not lower than the appraised value, and provide Seller a copy of the appraisal (or lender verification of the appraised value). Seller shall then have five (5) days to respond to Purchaser's request for a reduction in the Purchase Price (the "Response Deadline"). If the parties are unable to agree in writing as to a Purchase Price within five (5) days following the Response Deadline, then either Purchaser or Seller may terminate this Agreement by written notice to the other party, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. For purposes of this paragraph, Purchaser is deemed to have received a copy of the appraisal when Purchaser is notified in writing of the appraised value of the Property. If Purchaser does not request a reduction in the Purchase Price within five (5) days after receipt of the appraisal, then this condition shall be deemed waived by Purchaser.

**6. FINANCING:** If this Agreement is conditioned upon Purchaser obtaining financing, Purchaser shall make written application for such loan within seven (7) days after the Date of Ratification (as defined in Paragraph 27) and shall make diligent effort to secure a written loan commitment no later than 5:00 p.m. on the settlement date set forth in Paragraph 9. If, at the time of such loan application, Purchaser chooses not to lock-in the rate and/or points that meet or exceed the requirements set forth in Paragraph 4, Purchaser waives such rate and point contingency. If this Agreement is not conditioned upon Purchaser obtaining financing, Purchaser shall provide Seller with written verification from a third-party in possession of Purchaser's assets within seven (7) days after the Date of Ratification that Purchaser has sufficient assets to pay the balance of the Purchase Price at settlement. If Purchaser fails to comply with any of the provisions of this paragraph or fails to obtain a written loan commitment by 5:00 p.m. on the settlement date, then Seller may terminate this Agreement by written notice to Purchaser, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder. As used in this paragraph, "diligent effort" shall mean that Purchaser has provided all information or documentation requested by a lender within seven (7) days of each such request and paid all costs associated with such loan application, including but not limited to, application fees, credit reports and appraisal(s). Purchaser authorizes the lender to: (i) disclose to the Listing Broker and Selling Broker information about the progress of Purchaser's loan application and approval, including whether Purchaser has complied with the lender's requests and paid all costs associated with such application; and (ii) furnish a copy of Purchaser's loan estimate(s) and closing disclosure(s) to the Selling Broker. If, after diligent effort, Purchaser is unable to obtain financing, then this Agreement shall terminate, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

**7. WIRE FRAUD ALERT:** Criminals are hacking email accounts of real estate agents, settlement attorneys/agents and others resulting in fraudulent wire instructions being sent to divert Seller or Purchaser's funds to the criminal's account. These emails look legitimate, but they are not. **Purchaser and Seller are advised not to wire any funds without personally speaking with the intended recipient of the wire to confirm the bank routing number and account number.**          *Roy M. Terry, Trustee*

**\*8. DEPOSIT:** Purchaser shall make a deposit of $ __3,000.00__ to be held by ~~TBD~~ _Roy M. Terry, Trustee_ (the "Escrow Agent") in the form of: ☒ check  ☐ cash  ☐ other _____ (the "Deposit"). Purchaser [select one]: ☐ has paid the Deposit to the Escrow Agent OR ☒ will pay the Deposit to the Escrow Agent within __5__ days (the "Extended Deposit Date") after the Date of Ratification. If Purchaser fails to pay the Deposit as set forth herein, then Purchaser shall be in breach of this Agreement. At Seller's option and in lieu of all other remedies set forth in this Agreement, Seller may terminate this Agreement by written notice to Purchaser and neither party shall have any further obligation hereunder. If the Escrow Agent is a Virginia Real Estate Board ("VREB") licensee, the parties direct the Escrow Agent to place the Deposit in an escrow account by the end of the fifth business banking day following the latter of: (i) ratification and delivery of this Agreement as defined in Paragraph 27, or (ii) the Extended Deposit Date. If the Escrow Agent is not a VREB licensee, the parties direct the Escrow Agent to place the Deposit in an escrow account in conformance with applicable Federal or Virginia law and regulations. The Deposit may be held in an interest bearing

This form was produced by Tara Kelley. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

AuthentiSign ID: 3A7F5F25-B91F-4F12-B4F7-BD9A4CDF6CE1

account and the parties waive any claim to interest resulting from such Deposit. The Deposit shall not be released by the Escrow Agent until (i) credited toward the purchase price at settlement; (ii) Seller and Purchaser agree in writing as to its disposition, (iii) a court of competent jurisdiction orders a disbursement of the funds, or (iv) disbursed in such manner as authorized by the terms of this Agreement subject to Virginia law and/or VREB Regulations. Seller and Purchaser agree that Escrow Agent shall have no liability to any party for disbursing the Deposit in accordance with this paragraph, except in the event of Escrow Agent's negligence or willful misconduct.

If the Property is foreclosed upon while this Agreement is pending, the terms of Virginia Code Section 54.1-2108.1 shall apply to the disbursement of the Deposit. The foreclosure shall be deemed a termination of this Agreement by Seller and, absent any default by Purchaser, the Deposit shall be disbursed to Purchaser.

\*9. **SETTLEMENT; POSSESSION:** Settlement shall be made at the offices of _____TBD_____ on or before [select one box and insert closing date]:

☐ ___May___ _27th_, 20_19_, or a reasonable time thereafter if the Purchaser or Seller is making diligent effort to satisfy any contingencies contained in this Agreement.

OR

☐ _____, 20___, and subject to Seller's right to cure any title defects as set forth in Paragraph 24B, if settlement does not occur within ten (10) days following such date, a party who is ready, willing and able to close under the terms of this Agreement may terminate this Agreement by written notice to the other party, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

**Possession of the Property shall be given at settlement, unless otherwise agreed in writing by the parties.** Failure to check one box above shall not invalidate this Agreement. The settlement date shall be as inserted above. Seller and Purchaser authorize and direct the settlement agent to provide a copy of Purchaser's closing disclosure (if Purchaser obtains lender financing), settlement statement and/or disbursement summary for this transaction to the Seller, Purchaser, Listing Broker and Selling Broker.

\*10. **OCCUPANCY DISCLOSURE:** Purchaser intends to [select one]: ☒ occupy OR ☐ not occupy the Property as a principal residence.

\*11. **RESIDENTIAL PROPERTY DISCLOSURE:** Seller represents the Property [select one]: ☒ is OR ☐ is not subject to the Virginia Residential Property Disclosure Act, Sections 55-517 et. seq. of the Code of Virginia, which requires the Seller of certain residential property to furnish the Purchaser with a Residential Property Disclosure Statement. Property Disclosure [select one]: ☒ is OR ☐ is not attached. (Attachment does not become part of this Agreement.)

12. **FAIR HOUSING DISCLOSURE:** All offers shall be presented and considered without regard to race, color, religion, sex, handicap, familial status, elderliness or national origin as well as all classes protected by the laws of the United States, the Commonwealth of Virginia and applicable local jurisdiction.

\*13. **PROPERTY OWNERS' ASSOCIATION DISCLOSURE:** The Seller represents that the Property [select one]: ☒ is OR ☐ is not located within a development which is subject to the Virginia Property Owners' Association Act (Sections 55-509 et. seq. of the Code of Virginia) (the "Act"). If the Property is within such a development, the Act requires the Seller to obtain from the property owners' association an association disclosure packet and provide it to the Purchaser, or Purchaser's authorized agent. The information contained in the association disclosure packet shall be current as of the specified date on the disclosure packet. The Purchaser may cancel this Agreement (a) within 3 days after the date of this Agreement, if on or before the date that the Purchaser signs this Agreement, the Purchaser receives the association disclosure packet or is notified that the association disclosure packet is not available; (b) within 3 days after receiving the association disclosure packet, if the association disclosure packet or notice that the association disclosure packet will not be available is hand delivered, delivered by electronic means or delivered by a commercial overnight delivery service or the United Parcel Service, and a receipt obtained; or (c) within 6 days after the postmark date if the association disclosure packet or notice that the association disclosure packet will not be available is sent to the Purchaser by United States mail. The Purchaser may also cancel this Agreement at any time prior to settlement if the Purchaser has not been notified that the association disclosure packet will not be available and the association disclosure packet is not delivered to the Purchaser. Notice of cancellation shall be provided to the Seller (owner) or his agent by one of the following methods: (i) hand delivery; (ii) United States mail, postage prepaid, provided the sender retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming such mailing; (iii) electronic means provided the sender retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a

AuthentIsign ID: 3A7F5F25-B91F-4F12-B4F7-BD9A4CDF6CE1

certificate of service prepared by the sender confirming the electronic delivery; or (iv) overnight delivery using a commercial service or the United States Postal Service. In the event of a dispute, the sender shall have the burden to demonstrate delivery of the notice of cancellation. Such cancellation shall be without penalty, and the Seller shall cause any deposit to be returned promptly to the Purchaser, but not later than thirty days from the date of cancellation. Seller shall provide written instructions to the Association for delivery of the disclosure packet to Purchaser or Purchaser's authorized agent. The right to receive the association disclosure packet and to cancel this Agreement terminates at settlement. If the Purchaser has received the association disclosure packet, the Purchaser has a right, at Purchaser's sole expense, to request an update of such disclosure packet from the property owners' association in accordance with subsection G of Section 55-509.6 or subsection C of Section 55-509.7 as appropriate. A request for an updated disclosure packet does not extend the cancellation periods set forth above.

*14. **CONDOMINIUM DISCLOSURE:** The Seller represents that the Property [select one]: ☐ is OR ☒ is not a condominium resale, which is subject to the Virginia Condominium Act (Section 55-79.39 et seq. of the Code of Virginia) (the "Condominium Act"). If the Property is a condominium resale, the Condominium Act requires the Seller to obtain from the unit owners' association a resale certificate and provide it to the Purchaser or Purchaser's authorized agent. The information contained in the resale certificate shall be current as of the specified date on the resale certificate. The Purchaser may cancel this Agreement (a) within 3 days after the date of this Agreement, if on or before the date that the Purchaser signs this Agreement, the Purchaser receives the resale certificate; (b) within 3 days after receiving the resale certificate if the resale certificate is hand delivered, delivered by electronic means or delivered by a commercial overnight delivery service or the United Parcel Service, and a receipt obtained; or (c) within 6 days after the postmark date if the resale certificate is sent to the Purchaser by United States mail. Notice of cancellation shall be provided to the Seller (owner) or his agent by one of the following methods: (i) hand delivery; (ii) United States mail, postage prepaid, provided the sender retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming such mailing; (iii) electronic means provided the sender retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service prepared by the sender confirming the electronic delivery; or (iv) overnight delivery using a commercial service or the United States Postal Service. In the event of a dispute, the sender shall have the burden to demonstrate delivery of the notice of cancellation. Such cancellation shall be without penalty, and the Seller shall cause any deposit to be returned promptly to the Purchaser, but not later than thirty days from the date of cancellation. Seller shall provide written instructions to the Association for the delivery of the resale certificate to Purchaser or Purchaser's authorized agent. The right to receive the resale certificate and to cancel this Agreement terminates at settlement. If the Purchaser has received the resale certificate, the Purchaser has a right, at Purchaser's sole expense, to request from the unit owners' association a resale certificate update or financial update in accordance with Section 55-79.97:1. A request for an updated resale certificate does not extend the cancellation periods set forth above.

15. **OWNERS' ASSOCIATION REPAIRS:** If a disclosure packet, resale certificate or inspection report from a Property or Condominium Owners' Association indicates the Property is not in compliance with the Association's governing documents, then Purchaser may request in writing within five (5) days from receipt of any such disclosure packet, resale certificate or inspection report that Seller, at Seller's expense, make any repairs, perform any maintenance or take any corrective action required to conform the Property to the Association's requirements prior to settlement. If any such repairs, maintenance or corrective action is not performed prior to settlement, then Purchaser may terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. If Purchaser does not make a written request to Seller within five (5) days after receipt of the disclosure packet, resale certificate or inspection report containing such non-compliance notice, then Purchaser's right to make such request to Seller or to terminate this Agreement shall be deemed waived.

*16. **PROPERTY INSPECTION** [select one]:

☐ Purchaser waives a property inspection of the Property.

**OR**

☒ Seller hereby grants to Purchaser the right to have the Property inspected by a licensed home inspector or other person(s) selected by Purchaser at Purchaser's expense and to request repair of defects revealed and/or a Seller paid closing cost credit to Purchaser (**Purchaser's requested repairs and Seller paid closing cost credit shall be collectively referred to herein as the "Repair Request"**). Inspections may include, but are not limited to, all structural and building components and systems, radon gas, underground storage tanks, soil condition, environmental testing and engineering studies. The term "*defects*" as used in this paragraph 16 shall mean (*i*) *a condition which impairs the normal stability, safety or use of any improvements (buildings) on the Property, or (ii) damage to any part of the*

This form was produced by Tara Kelley. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

AuthentIsign ID: 3A7F5F25-B91F-4F12-B4F7-BD9A4CDF6CE1

improvements, but shall exclude any cosmetic flaws, antiquated systems or grandfathered components that are in working order but would not comply with current building code if constructed or installed today.

Purchaser shall provide Seller with all inspection reports, cost of repairs and Purchaser's written Repair Request no later than [select one]: ☐ ___ days after the Date of Ratification OR ☐ _____ ( a.m./ p.m.) on _____. If no box is checked, the parties agree that Purchaser shall provide Seller with all inspection reports, cost of repairs and a written Repair Request no later than ten (10) days after the Date of Ratification. In the Repair Request, Purchaser reserves the right to request certain repairs be performed by a contractor currently licensed by the Virginia Board of Contractors, but shall not request Seller to perform any inspections of the Property. If Purchaser does not submit to Seller all inspection reports, cost of repairs and the Repair Request by said date, then Purchaser waives the right to request repairs and/or a Seller paid closing cost credit, agrees that the present condition of the Property is satisfactory, and will proceed to settlement in accordance with the Purchase Agreement. Seller shall respond in writing to Purchaser's Repair Request within seven (7) days of its receipt (the "Negotiation Period"). If Seller agrees in writing to accept such Repair Request, then the parties shall proceed to settlement. If Seller does not respond in writing within the Negotiation Period, then Seller shall be deemed to have rejected Purchaser's Repair Request.

If Purchaser's Repair Request is not accepted by Seller, then the parties may continue to negotiate the terms of the Repair Request during the Negotiation Period. Once a party rejects an offer or presents a counteroffer to the other party, then all prior offers and counteroffers made by either party regarding the Repair Request shall be deemed rejected so that only one Repair Request offer or counteroffer at a time shall be considered. Seller may not require Purchaser to accept a Seller paid closing cost credit to Purchaser in lieu of repairs requested by Purchaser. Further, no party may unilaterally terminate this Agreement during the Negotiation Period.

If, by 5:00 p.m. on the seventh (7th) day of the Negotiation Period, no final agreement is reached as to the Repair Request, then Purchaser shall have until 5:00 p.m. on the second (2nd) day after the end of the Negotiation Period to either: (i) terminate this Agreement by written notice to Seller, or (ii) accept in writing Seller's last offer regarding the Repair Request and proceed to settlement. If Purchaser terminates this Agreement or fails to notify Seller of its election within the said two (2) day period, then this Agreement shall terminate, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

All repairs pursuant to Paragraph 16 shall be made in a workmanlike manner prior to settlement or such other time as agreed to by the parties. Unless otherwise agreed to by the parties, Seller shall provide Purchaser with paid receipts for all repairs prior to settlement or if repairs are to be paid from Seller's proceeds, Seller shall provide written invoices to Purchaser and the settlement agent directing disbursement of Seller's proceeds for payment of said invoices.

Seller shall have all utilities supplied to all systems prior to the inspection. If Seller fails to have all utilities supplied to all systems prior to Purchaser's inspection, then the expiration of the inspection period set forth above shall be extended until ten (10) days following the date that Purchaser is notified by Seller that all utilities have been supplied to all systems. Purchaser and Seller, their heirs and assigns, hereby jointly and severally release and forever discharge the Listing and Selling Brokers and their real estate licensees in this transaction, from any and all liabilities, obligations, causes or action, claims and demands whatsoever arising out of or in any way connected with any or all work performed, materials furnished or inspections performed in connection with the captioned Property by contractors, suppliers or inspectors hired by them on behalf of the parties to this Agreement. Purchaser and Seller acknowledge that the provisions of this Paragraph 16 are in addition to treatments or repairs made pursuant to Paragraphs 15, 24E, 24F and 24G.

**17. DEFAULT:** If either Seller or Purchaser defaults under this Agreement, the defaulting party, in addition to all other remedies available at law or in equity, shall be liable for the brokerage fees set forth in Paragraph 19 and any brokerage fees set forth in Seller's Listing Agreement with the Listing Broker for the Property (which document is hereby incorporated herein by this reference) as if this Agreement and Seller's Listing Agreement had been performed, and for any damages and all expenses incurred by the non-defaulting party, the Listing Broker and the Selling Broker in connection with this transaction and the enforcement of this Agreement and Seller's Listing Agreement, including, without limitation, attorney's fees and court costs. Payment of a real estate broker's fee as the result of a transaction relating to the Property which occurs subsequent to a default under this Agreement, shall not relieve the defaulting party of liability for any brokerage fees due under this Agreement or Seller's Listing Agreement, or for any damages and expenses, including attorney's fees and court costs, incurred by the non-defaulting party, the Listing Broker and the Selling Broker in connection with this transaction.

**18. Choice of Settlement Agent:** Chapter 27.3 (§ 55-525.16 et seq.) of Title 55 of the Code of Virginia provides that the purchaser or borrower has the right to select the settlement agent to handle the closing of this transaction. The settlement agent's role in closing this transaction involves the coordination of numerous

CVR 335                             Page 5 of 9                            Revised 8/2017

InstanetFORMS

This form was produced by Tara Kelley. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

Authentisign ID: 3A7F5F25-B91F-4F12-B4F7-BD9A4CDF6CE1

administrative and clerical functions relating to the collection of documents and the collection and disbursement of funds required to carry out the terms of the contract between the parties. If part of the purchase price is financed, the lender for the purchaser will instruct the settlement agent as to the signing and recording of loan documents and the disbursement of loan proceeds. No settlement agent can provide legal advice to any party to the transaction except a settlement agent who is engaged in the private practice of law in Virginia and who has been retained or engaged by a party to the transaction for the purpose of providing legal services to that party.

Variation by agreement: The provisions of Chapter 27.3 (§ 55-525.16 et seq.) of Title 55 of the Code of Virginia may not be varied by agreement, and rights conferred by this chapter may not be waived. The seller may not require the use of a particular settlement agent as a condition of the sale of the property.

Escrow, closing, and settlement service guidelines: The Virginia State Bar issues guidelines to help settlement agents avoid and prevent the unauthorized practice of law in connection with furnishing escrow, settlement or closing services. As a party to a real estate transaction, the purchaser or borrower is entitled to receive a copy of these guidelines from his settlement agent, upon request, in accordance with the provisions of Chapter 27.3 (§ 55-525.16 et seq.) of Title 55 of the Code of Virginia.

**19. BROKERAGE FEE:** Seller authorizes and directs the settlement agent to disburse to Listing Broker and Selling Broker from the settlement proceeds their respective brokerage fees payable as a result of the sale and settlement set forth under this Agreement. Prior to settlement, Listing Broker and/or Selling Broker shall deliver to the settlement agent a signed written statement setting forth the disbursement instructions for payment of any brokerage fees and any sales incentives payable to each broker.

**\*20. HOME WARRANTY INSURANCE:** Purchaser has been advised of the availability of a one year warranty program and ☒ declines coverage OR ☐ elects to purchase the home warranty program. The cost of the _____ home warranty program is $_____ and is to be paid by ☐ Purchaser OR ☐ Seller at settlement. The parties acknowledge that Listing and/or Selling Brokers and their respective licensees may receive a fee for each home warranty sold.

**21. RELATED BUSINESS AND SERVICES:** The Listing Broker and Selling Broker may engage in mortgage loan, homeowner's and title insurance, real estate settlement, home warranty and other real estate related businesses and services from which they receive compensation during the course of this transaction, in addition to the real estate brokerage fees.

**22. PURCHASER DISCLOSURE:** Purchaser warrants he/she does not own any real or personal property that must be sold and settled prior to the settlement of this Agreement, except as disclosed in this Agreement.

**\*23. ADDITIONAL TERMS:**

Settlement is subject to approval by Bankruptcy Court

**24. STANDARD PROVISIONS:**

**A. EXPENSE PRORATIONS:** Seller agrees to pay the expense of preparing the deed and the applicable grantors tax, release fees, and any other fees applicable to the grantor by custom. Except as otherwise agreed herein, Purchaser shall pay all expenses incurred by Purchaser in connection with this Agreement, including without limitation, title examination fees, title insurance premiums, survey costs, recording costs and Purchaser's attorney's fees. All taxes, assessments, interest, rent escrow deposits and other ownership fees, if any, shall be prorated as of the date of settlement. In addition to the Purchase Price, Purchaser agrees to pay Seller for all fuel oil and propane/LP gas remaining in any tanks (if applicable) at the prevailing market price as of the date of settlement.

**B. TITLE:** At settlement Seller shall convey the Property to Purchaser by a general warranty deed containing English covenants of title, free of all encumbrances, tenancies, and liens (for taxes or otherwise), but subject to such restrictive

This form was produced by Tara Kelley. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

Authentisign ID: 3A7F5F25-B91F-4F12-B4F7-BD9A4CDF6CE1

covenants and utility easements of record which do not materially and adversely affect the use of the Property for residential purposes or render the title unmarketable. If the Property does not abut a public road, title to the Property must include a recorded easement providing adequate access thereto. In the event this sale is subject to a financing contingency under Paragraph 4, the access to a public road must be acceptable to the lender. If the examination reveals a title defect that can be remedied by legal action or otherwise within a reasonable time, Seller, at his/her expense, shall promptly take such action as is necessary to cure such defect. If the defect is not cured within sixty (60) days after Seller receives notice of the defect, then either party may terminate this Agreement at the expiration of such sixty (60) day period by written notice to the other party. Upon termination of this Agreement, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. The parties agree that the settlement date prescribed in Paragraph 9 shall be extended if necessary to enable Seller to cure any title defect, but not for more than sixty (60) days, time being of the essence.

**C. LAND USE ASSESSMENT:** In the event the Property is taxed under land use assessment and this sale results in disqualification from land use eligibility, Seller shall pay any rollback taxes assessed. If the Property continues to be eligible for land use assessment, Purchaser agrees to make application at Purchaser's expense for continuation under land use, and to pay any rollback taxes resulting from failure to file or to qualify. Notwithstanding anything herein to the contrary, the provisions of this Paragraph C shall survive settlement and the delivery of the deed.

**D. RISK OF LOSS:** All risk of loss or damage to the Property by fire, windstorm, casualty or other cause is assumed by Seller until settlement. In the event of substantial loss or damage to the Property before settlement, Purchaser shall have the option of either (i) terminating this Agreement, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder, or (ii) affirming this Agreement, in which event Seller shall assign to Purchaser all of Seller's rights under any policies of insurance applicable to the Property.

**E. EQUIPMENT CONDITION AND INSPECTION:** Seller shall convey and Purchaser agrees to accept the Property at settlement in its physical condition at the time the Date of Ratification, except as otherwise provided herein. Seller warrants that all appliances, heating and cooling equipment, plumbing systems and electrical systems will be in working order at the time of Settlement or at Purchaser's occupancy, whichever occurs first. Seller agrees to deliver the Property in broom-clean condition and to exercise reasonable and ordinary care in the maintenance and upkeep of the Property between the date this Agreement is executed by Seller and Settlement or at Purchaser's occupancy, whichever occurs first. Seller grants to Purchaser or his representatives the right to make a pre-occupancy or pre-settlement inspection to verify that the condition of the Property conforms to this Agreement and to ensure that repairs, if any, have been completed.

**\*F. WELL, SEPTIC OR MUNICIPAL SYSTEMS:** The Property is served by [select one]: ☒ a well OR ☐ municipal water system. The Property is served by [select one]: ☒ a septic system OR ☐ municipal sewage system. If one or more municipal systems is selected and it is determined prior to settlement by the municipality or a Virginia licensed contractor that the Property is not served by such system(s), then Purchaser shall provide the written determination to Seller. Purchaser may then terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder.

If the Property is served by a well and/or septic system, Seller agrees to furnish Purchaser with a certificate dated not more than 30 days prior to settlement from a Virginia Department of General Services certified laboratory indicating that the well water is free from contamination by coliform bacteria, and a statement from a septic system contractor indicating there is no evidence of malfunction of the septic system. If Purchaser obtains a VA loan, the well water shall also be tested by Seller and certified as being free from lead contamination. Inspection of the septic system shall include **[check all applicable boxes]:**

    ☒ visual inspection of drainfield surface with rod probing

    ☒ pump contents and visual inspection of distribution box and all tanks

    ☐ other (describe): _____

    ☒ inspection per manufacturer's guidelines of alternative septic system.

If well water contamination and/or septic system malfunctions are found, Seller shall repair all malfunctions and correct the well contamination at Seller's expense. Subject to the limitation set forth in Paragraph H below, if Seller fails to comply with any provision of this paragraph, then Purchaser may: (i) utilize the remedies set forth in Paragraph 17; (ii) accept the Property in its current condition; or (iii) terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

This form was produced by Tara Kelley. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

Authentisign ID: 3A7F5F25-B91F-4F12-B4F7-BD9A4CDF6CE1

*G. **WOOD INFESTATION:** Seller shall furnish Purchaser with an inspection report dated not more than 30 days prior to settlement from a Virginia licensed termite control company concerning the presence of, or damage from, termites or other wood destroying insects. If the inspection reveals active infestation or damage caused by wood destroying insects, whether past or present, to the (i) primary dwelling, (ii) any other dwelling(s) on the Property with a valid certificate of occupancy, and (iii) the following additional structures _____ Seller shall have the affected area treated and have the damage repaired by a reputable company. The treatment company shall furnish a one-year warranty on such treatment. Subject to the limitation imposed by Paragraph H below, if Seller fails to comply with any provision of this paragraph, Purchaser may: (i) utilize the remedies set forth in Paragraph 17; (ii) accept the Property in its current condition; or (iii) terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

*H. **LIMITATION:** If the total costs of fulfilling Seller's repair or treatment obligations set forth in Paragraphs F and G above exceeds $ __1,000.00__ ("Repair Limit"), then Seller shall have the option to: (i) fulfill Seller's obligations set forth herein; or (ii) pay or credit the Repair Limit to Purchaser and refuse to pay any excess of the Repair Limit. If Seller elects option (ii), Purchaser shall have the right to either accept the Property in its present condition (in which case the Seller shall pay or credit the Repair Limit to Purchaser at settlement), or to terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder. If no Repair Limit is entered in this paragraph, the parties agree that the amount shall be $1,000.00. The Repair Limit is independent of any obligations agreed to by Seller pursuant to Paragraph 16 or any inspection/repair addendum.

I. **VA/FHA Loans:** If a VA or FHA loan is selected in Paragraph 4, it is expressly agreed that notwithstanding any other provisions of this Agreement, Purchaser shall not be obligated to complete the purchase of the Property or incur any penalty by forfeiture of earnest money deposits or otherwise unless Purchaser has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner, Veterans Administration, or a direct endorsement lender setting forth the appraised value of the Property of not less than the Purchase Price. Purchaser shall have the privilege and option of proceeding with consummation of this Agreement without regard to the amount of the appraised value. The appraised value is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. Purchaser should satisfy himself/herself that the price and condition of the Property are acceptable.

J. **MECHANIC'S LIEN DISCLOSURE:** Virginia law (§43-1 et seq.) permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against the Property. This lien may be filed at any time after the work is commenced or the material is furnished, within 90 days from the last day of the month in which the lienor last performed work or furnished materials or 90 days from the time the construction, removal, repair or improvement is terminated. **An effective lien for work performed prior to the date of settlement may be filed after settlement. Legal counsel should be consulted.** Seller shall deliver to Purchaser at settlement an affidavit in a form acceptable to Purchaser's title company, signed by Seller, that no labor or materials have been furnished to the Property within the statutory period for the filing of mechanics' or materialmens' liens against the Property. If labor or materials have been furnished to the Property during the statutory period, Seller shall deliver to Purchaser an affidavit signed by Seller and the person(s) furnishing the labor and/or materials that such items have been paid.

K. **NONBINDING MEDIATION:** Unless waived by mutual agreement of the parties, any disputes or claims arising out of this Agreement (except matters involving mechanics liens or licensing) shall be submitted to mediation prior to instituting arbitration or litigation. The cost of mediation will be shared equally between Purchaser and Seller. The mediation shall be non-binding, unless a satisfactory settlement has been reached. Thus, if no settlement is reached, the parties are not bound by the mediation and may pursue any course of action. If a settlement is reached, it shall be binding upon the parties. The mediation shall be provided by a mutually agreeable mediator. Judicial actions to provide provisional remedies, such as an injunction or a lis pendens, shall not be prohibited by the agreement to mediate, nor shall it waive a party's right to mediate.

L. **MISCELLANEOUS:** This Agreement represents the entire agreement between Seller and Purchaser and may not be modified or changed except by written instrument executed by the parties. This Agreement shall be construed according to the laws of the Commonwealth of Virginia and shall be binding upon and shall inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties. To the extent any handwritten or typewritten terms herein conflict with, or are inconsistent with the pre-printed terms hereof, the handwritten or typewritten terms shall control. This Agreement may only be assigned by Purchaser with the written consent of the Seller. If the Seller agrees in writing to an assignment of this Agreement, Purchaser shall remain obligated hereunder until settlement. The parties agree that faxed or electronic transmission of any signed original document shall have the same effect as an original. As used in this

This form was produced by Tara Kelley. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

Authentisign ID: 3A7F5F25-B91F-4F12-B4F7-BD9A4CDF6CE1

Agreement, a "day" shall mean a calendar day unless otherwise noted. For the purpose of computing time periods, the first day shall be the day following the commencement of a time period. This Agreement may be signed in one or more counterparts, each of which is deemed to be an original and all of which shall together constitute the same instrument. No party will refuse delivery of any notice from the other party in order to hinder or delay any deadline established in this Agreement. **Unless otherwise provided herein, the provisions of this Agreement affecting title shall be deemed merged into the deed delivered at settlement and shall not survive settlement.**

**25. SELLER REPRESENTATION:** Seller warrants each person signing this Agreement as Seller includes all persons possessing an ownership interest in the Property or who will be a necessary party to convey clear title to the Property.

**26. ELECTRONIC SIGNATURES.** In accordance with the Uniform Electronic Transactions Act (UETA) regarding electronic signatures and transactions, the parties do hereby expressly authorize and agree to the use of electronic (such as Authentisign) signatures as an additional method of signing and/or initialing this Agreement.

**\*27. ACCEPTANCE:** This Agreement becomes a legally binding agreement only upon ratification and delivery. Unless ratification and delivery of this Agreement occurs by ___5:00___ ☐ a.m. or ☒ p.m. on ___04/29/19___, this offer **shall expire and shall not be binding on either party.** If the parties desire to accept an offer that has expired, then (i) the date set forth in this paragraph 27 must be revised to the ratification date (or later), (ii) each party must initial such revision, and (iii) ratification and delivery must occur prior to the revised expiration date.

As used herein, "ratification and delivery" means delivery of a final accepted and signed Agreement to the other party or their respective broker or salesperson by hand delivery, fax or electronic transmission, or by a professional courier service (including overnight delivery service) or by United States mail with return receipt requested. In the event of a dispute, the sender shall have the burden to demonstrate delivery to the recipient of the final accepted and signed Agreement. "Date of Ratification" means the date upon which ratification and delivery occurs. Purchaser and Seller understand that they shall have the right to withdraw any offer at any time prior to ratification and delivery. If either party withdraws an offer, notice shall be deemed effective upon receipt. If any offer is withdrawn, all deposits shall be returned to the Purchaser at no penalty.

WITNESS the following authorized signatures:

| Purchaser: Daniel Akono | 04/25/2019 Date | X Seller: Roy M. Terry, Trustee | Date |
|---|---|---|---|
| Purchaser: Sorelle Kamdem | 04/24/2019 Date | Seller | Date |
| Purchaser | Date | Seller | Date |

*The following is for informational purposes only:*

**Selling Broker Company's Name and Address**

Keller Williams Realty
6801 Paragon Place Suite 300
Richmond, Va 23230

Office Phone  804 285-5901
Office Fax
DPOR Firm License No.:  0226018746

Purchaser's Authorized Agent's Information:
Name  Tara Kelley/ Shahida Reid
Email  tara@yourperfectwayhome.com
Cell No.  804 317-5438
Agent's DPOR License No.:  0225087464

**Listing Company's Name and address**

RE/MAX Commonwealth
7201 Glen Forest Dr, Suite 104
Richmond  VA  23226

Office Phone  804-288-5000
Office Fax  (804)288-8989
DPOR Firm License No.:  0226012204

Seller's Authorized Agent's Information:
Name  Robin Johnson
Email  robinjohnson1000@gmail.com
Cell No.
Agent's DPOR License No.:  0225169389

COPYRIGHT©2017 by the Central Virginia Regional MLS, LLC ("CVR MLS"). All rights reserved. This form may be used only by members in good standing of the CVR MLS. The reproduction of this form, in whole or in part, or the use of the names "Central Virginia Regional MLS" or "CVR MLS", in connection with any other form, is prohibited without prior written consent of CVR MLS.

This form was produced by Tara Kelley. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

Authentisign ID: 3A7F5F25-B91F-4F12-B4F7-BD9A4CDF6CE1



Virginia Real Estate Board
http://www.dpor.virginia.gov/Consumers/Disclosure_Forms/

# RESIDENTIAL PROPERTY DISCLOSURE STATEMENT
## ACKNOWLEDGEMENT BY SELLER AND PURCHASER

The Virginia Residential Property Disclosure Act (§ 55-517 et seq. of the *Code of Virginia*) requires the owner of certain residential real property—whenever the property is to be sold or leased with an option to buy—to provide notification to the purchaser of any disclosures required by the Act and to refer the purchaser to the Real Estate Board website referenced below for additional information.

Certain transfers of residential property are excluded from this requirement (see § 55-518).

**PROPERTY ADDRESS/**  9123 Colonnade CIR         Ashland        VA     23005-7463
**LEGAL DESCRIPTION:**  HICKORY HILL LOT 2 SEC 2

The purchaser is advised to consult the RESIDENTIAL PROPERTY DISCLOSURE STATEMENT webpage (http://www.dpor.virginia.gov/Consumers/Residential_Property_Disclosures) for important information about disclosures required by law that may affect the buyer's decision to purchase the real property described above.

**The owner(s) hereby provides notification** as required under the Virginia Residential Property Disclosure Act (§ 55-517 et seq. of the *Code of Virginia*) and, if represented by a real estate licensee as provided in § 55-523, further acknowledges having been informed of the rights and obligations under the Act.

X

Owner  Roy M. Terry, Trustee              Owner

Date                                      Date

**The purchaser(s) hereby acknowledges receipt of notification** of disclosures as required under the Virginia Residential Property Disclosure Act (§ 55-517 et seq. of the *Code of Virginia*). In addition, if the purchaser is (i) represented by a real estate licensee or (ii) not represented by a real estate licensee but the owner is so represented as provided in § 55-523, the purchaser further acknowledges having been informed of the rights and obligations under the Act.

Purchaser  Daniel Akono                   Purchaser  Sorelle Kamdem

04/25/2019                                04/24/2019

Date                                      Date              CVR 427 - rev 7/2017

DPOR rev 07/10/17 v3.11

This form was produced by Tara Kelley. CVR MLS forms may be used only   InstanetFORMS
by members in good standing of the Central Virginia Regional MLS.